No. 00-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 354N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBIN KALLOWAT,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Sanders,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John O. Putikka, Attorney at Law, Thompson Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Ilka Becker,

Assistant Attorney General, Helena, Montana

Robert Zimmerman, Sanders County Attorney, Thompson Falls, Montana

Submitted on Briefs: October 12, 2000
Decided: December 21, 2000

Filed:

_____

Clerk

Justice Terry. N. Trieweiler delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The Defendant, Robin Clay Kallowat was charged by Information filed in the District Court for the 20th Judicial District in Sanders County with the offense of Driving Under the Influence of Alcohol, in violation of § 61-8-401, MCA, Driving while License Suspended or Revoked, in violation of § 61-5-212, MCA, and by Amended Information with felony bail jumping, in violation of § 45-7-308, MCA. Kallowat pled not guilty and was found guilty of all charges following trial by jury. Kallowat appeals the District Court's denial of his pre-trial motion to dismiss. We affirm the order and judgment of the District Court.

¶3 The issue on appeal is whether the person who arrested Kallowat had probable cause to do so?

## FACTUAL BACKGROUND

¶4 On December 3, 1998, Officer Ken Ostrander observed Kallowat's vehicle in Hot Springs. After Ostrander started his shift that evening, at around 5 p.m., he saw the same vehicle illegally parked. The front of the car was on the sidewalk and front yard of an apartment building and the back end was in the street. Ostrander approached the vehicle and noticed that the driver, later identified as Robin Clay Kallowat, and the passenger were both passed out. A bottle of Yukon Jack Permafrost Schnapps was located between Kallowat's legs and a strong odor of alcohol emanated from the vehicle. A large kitchen knife was visible on the floor beneath the driver's seat. The keys were in the ignition and the radio was playing. Ostrander attempted to awaken Kallowat. After nearly half an hour, Kallowat regained consciousness and identified himself. After running a check on that

name, Ostrander discovered that Kallowat was driving with his license suspended and that he was a member of the Confederated Salish and Kootenenai Tribes. He called the tribal dispatcher who advised Ostrander to deliver Kallowat to a tribal officer at the Lone Pine Store, midway between Ostrander's location and the tribal police station. Ostrander handcuffed Kallowat and drove him to the Lone Pine Store where he handed him over to tribal officer, Daniel McClure. McClure arrested Kallowat for the DUI and took him to the Law and Order Center in Pablo. Although, Kallowat was initially charged in tribal court, he was subsequently charged in District Court based on the felony nature of his offense.

¶5 Before Kallowat's trial commenced, the town of Hot Springs discovered that Ostrander had been convicted of a felony in another state, prior to his employment as a police officer in Montana. Because Ostrander received a deferred sentence for the felony and fulfilled all the requirements, he assumed that the felony had been stricken from his record. The City subsequently fired Ostrander. Kallowat then moved the District Court to dismiss his case because of an illegal arrest. The District Court denied his motion, on the basis that Ostrander had probable cause to arrest Kallowat as a private citizen. Following trial and a conviction on all counts, Kallowat appeals the denial of his motion to dismiss.

## DISCUSSION

¶6 The issue on appeal is whether the person who arrested Kallowat had probable cause to do so?

¶7 The district court's denial of a motion to dismiss is based on a legal conclusion which we review to determine if it was correct. *State v. Bullock* (1995), 272 Mont. 361, 368, 901 P.2d 61, 66.

¶8 According to Montana law, a police officer can stop a citizen based on particularized suspicion in order to determine whether there is probable cause to arrest. Section 46-6-311 (1), MCA (1997). However, "a private person may arrest another when there is probable cause to believe that the person is committing or has committed an offense and the existing circumstances require the person's immediate arrest. Section 46-6-502(1), MCA (1997). Therefore, although an officer may stop a person based solely on particularized suspicion, a private person or an out-of-jurisdiction police officer may only arrest or detain a person based on probable cause and finding the existing circumstances require immediate arrest. Kallowat contends that probable cause did not exist until Ostrander removed him from his vehicle and that by that time his rights had already been violated. In

addition, he contends that even if there was probable cause there were no circumstances which required his immediate arrest.

¶9 We conclude sufficient facts were evident to Ostrander to provide probable cause for Kallowat's arrest. Kallowat's vehicle was parked on the sidewalk. Kallowat and his passengers were passed out and Kallowat could not be immediately revived. The keys were in the ignition and the radio was on. A bottle of alcoholic beverages was between Kallowat's legs. Furthermore, the facts demonstrated a need for immediate action. Ostrander had no way to know how soon Kallowat would awaken and attempt to operate his vehicle. Kallowat had what could be used as a weapon in his possession. Immediate restraint until a tribal officer could take custody was the only reasonable course of action.

¶10 For these reasons, we affirm the order and judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY